# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LONNIE SMITH** | **CIVIL ACTION** |
| **versus** | **NO. 12-1159** |
| **WARDEN LYNN COOPER** | **SECTION: "C" (3)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. <u>See</u> 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Lonnie Smith, is a state prisoner incarcerated at the Avoyelles Correctional Center, Cottonport, Louisiana. On March 7, 2007, he was convicted of first degree

robbery under Louisiana law.[1]  On March 14, 2008, he was found to be a second offender and was sentenced as such to a term of twenty years imprisonment.[2]  On October 1, 2008, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction and sentence.[3]  The Louisiana Supreme Court then denied his related writ application on September 4, 2009.[4]

On or about November 28, 2009, petitioner filed an application for post-conviction relief with the state district court.[5]  That application was denied.[6]  Petitioner's related writ applications were likewise denied by the Louisiana Fourth Circuit Court of Appeal on March 29, 2010,[7] and by the Louisiana Supreme Court on April 29, 2011.[8]

---

[1] State Rec., Vol. V of VII, trial transcript, p. 202; State Rec., Vol. I of VII, minute entry dated March 7, 2007.

[2] State Rec., Vol. III of VII, transcript of March 14, 2008; State Rec., Vol. I of VII, minute entry dated March 14, 2008.

[3] State v. Bradley, 995 So.2d 1230 (La. App. 4th Cir. 2008) (No. 2008-KA-0195); State Rec., Vol. III of VII.

[4] State v. Bradley, 17 So.3d 950 (La. 2009) (No. 2008-K-2610); State Rec., Vol. VI of VII.

[5] State Rec., Vol. VII of VII.

[6] State Rec., Vol. VII of VII; State Rec., Vol. I of VII, minute entry dated April 16, 2010.

[7] State v. Smith, No. 2010-K-0407 (La. App. 4th Cir. Mar. 29, 2010); State Rec., Vol. VII of VII.

[8] State ex rel. Smith v. State, 62 So.3d 106 (La. 2011) (No. 2010-KH-1051); State Rec., Vol. VII of VII.

On April 16, 2012, petitioner filed the instant federal *habeas corpus* application.[9] The state concedes that the application is timely.[10]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

---

[9] Rec. Doc. 1.

[10] Rec. Doc. 12, p. 8.

As to pure questions of law and mixed questions of law and fact, a federal court must

defer to the state court's decision on the merits of such a claim unless that decision "was contrary

to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary

to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535

U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals

has explained:

> A state court decision is contrary to clearly established precedent if
> the state court applies a rule that contradicts the governing law set
> forth in the [United States] Supreme Court's cases. A state-court
> decision will also be contrary to clearly established precedent if the
> state court confronts a set of facts that are materially
> indistinguishable from a decision of the [United States] Supreme
> Court and nevertheless arrives at a result different from [United
> States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets,

and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court

has explained:

> [A] state-court decision can involve an "unreasonable application" of
> this Court's clearly established precedent in two ways. First, a
> state-court decision involves an unreasonable application of this
> Court's precedent if the state court identifies the correct governing
> legal rule from this Court's cases but unreasonably applies it to the
> facts of the particular state prisoner's case. Second, a state-court
> decision also involves an unreasonable application of this Court's
> precedent if the state court either unreasonably extends a legal
> principle from our precedent to a new context where it should not

> apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000).  The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."), cert. denied, 132 S.Ct. 1537 (2012).

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court recently held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added).

## II. Facts

Petitioner and a co-defendant, Craig Bradley, were each charged with two counts of armed robbery and jointly tried. At the conclusion of trial, petitioner was convicted of one count of first degree robbery, while Bradley was convicted of one count of armed robbery. On direct review, the Louisiana Fourth Circuit Court of Appeal summarized the facts of the case as follows:

> The Tango Bar is located in the French Quarter. New Orleans Police Department Detective Orlando Matthews investigated a robbery that occurred there on the night of March 26, 2004. In the course of his investigation, he learned that a suspect in the robbery, Lonnie Smith, worked at a business called the Black Tie, which was located near the bar. The bar and the business were both owned by Mark Blandford.[FN1] From this lead, the detective compiled a photographic lineup and presented it to patrons and employees who were present during the armed robbery. Following identification of Smith as a perpetrator, he was arrested.

> > [FN1] Blandford was a witness at the trial even though he was not present in the bar at the time of the robbery.

> Randall Adams, an out-of-town tourist, testified that on the night in question he had gone into the Tango Bar and ordered a drink. A male subsequently entered the bar and put a gun over Adams' shoulder. Adams then noticed that a second, shorter man with a gun had entered the bar. That man started screaming at a woman playing video poker, saying he wanted the money out of the poker machines. The female bartender, Jessica Mendoza, told him they did not have keys to the machines because they were privately owned. Adams said he turned and looked the man directly in the face, inches away. After realizing they could not get into the video poker machines the two robbers took money off the bar and removed money from the bar's cash register. One of them then ordered the bar patrons and employees upstairs. The police were called from Adams' cell phone.

> During the trial, Adams identified defendant Bradley as the man who first walked up behind him and put the gun over his shoulder. Although Adams gave a brief description of the second, shorter robber, he did not identify defendant Smith in court.

Blandford, the owner, testified that he was called to the Tango Bar following the robbery. When he got to the bar he recognized most of the people there, including the bartender, Jessica Mendoza, another bar employee, Adrienne Noble, and Adrienne's sister. Carl Brown, one of the supervisors at Black Tie, was also there. Blandford said he accompanied Mendoza outside with police to view several suspects. Mendoza did not identify anyone in that first group.

Blandford testified on cross examination that both defendant Smith and defendant Bradley worked for Black Tie and that Carl Brown may have been their supervisor.

Daniel Skehan testified that he went to the Tango Bar on March 26, 2004, at approximately 10:00 p.m., after bartending a silent auction at the Cabildo. He ordered a beer and placed his cell phone and cigarettes on the bar before going back outside to put his bag of work things in his truck. Two men came into the bar right before he left. He came back in the bar, and two seconds later the two men pulled out a gun. They ordered the bartender to give them money. They did not rob any of the patrons, except according to Skehan they took Skehan's cell phone. Then, at gunpoint, the robbers forced everyone in the bar into the back courtyard, and fled. Skehan saw the robbers' faces.

Skehan later was presented with a photo lineup, in which he identified the photo of Lonnie Smith. Skehan said he later identified defendant Bradley in an informal show-up lineup at the Eighth District police station. Skehan testified that he remembered both men because he pleaded with them to leave his cell phone, which had important telephone numbers of business associates. He identified both defendants in court. Skehan admitted to prior convictions for possession of marijuana within the last several years, attempted distribution of marijuana five (5) years previously, and a firearm conviction over ten (10) years ago. Skehan denied making any deals with the State in exchange for testifying.

Jessica Mendoza, the bartender, testified that the defendants walked into the bar and looked around. The two men approached the bar, and she asked what she could get for them. Defendant Bradley said something she did not understand. He then ordered her to give him the "f------ money". Mendoza asked if he was kidding. Bradley then pointed a gun at her, told her it was no joke, and again ordered her to give him all the "f------ money". Mendoza called out for fellow employee Adrienne Noble, who did not say anything. Then another woman, whose son worked at the bar, screamed and told Mendoza to just give Bradley the money from the cash register,

which she did.  Bradley asked for the poker money, meaning money kept to pay off winners playing the video poker machines.  Mendoza told him that what had been in the register was all she had.  The two men then herded everybody upstairs.  After the robbery, she described the robbers to police.  Police took her to a show-up of three individuals on the street that same night, but she positively excluded them as the robbers.  Mendoza later identified both defendants in separate photo lineups.  She also identified both defendants in court.[11]

### III.  Petitioner's Claims

### A.  Denial of Right to Cross-Examination

Petitioner's first claim is that he is entitled to relief because his rights were violated when he was denied the opportunity to cross-examine Daniel Skehan concerning the pending criminal charge against him.  On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected that claim, holding:

> In their first assignments of error, both defendants argue that the trial court erred in not allowing them to cross examine prosecution witness Daniel Skehan concerning a criminal charge then pending against him in another section of Orleans Parish Criminal District Court:
>
> MS. MORRIS:
>
> Q.  And do you have an interest in this case, as in did you make Any [sic] deals with the State for testifying hear this morning?
>
> A.  No.
>
> Q.  Is your date of Birth [sic] July 15th?
>
> A.  It's [date deleted].

---

[11] State v. Bradley, 995 So.2d 1230, 1233-34 (La. App. 4th Cir. 2008) (No. 2008-KA-1095); State Rec., Vol.  III of VII.

Q.  And so you're the same Daniel Skehan who has an open case in Section "G"?

MS. PARKS:

Objection.  She's not allowed to talk about open cases, only convictions.

THE COURT:

And I'll sustain the State's objection.  Your [sic] to ignore – you're to not allow that testimony to influence you in any way.  You may proceed with your questioning.

MS. MORRIS:

Okay, your honor.

MR. MEYER:

Judge, I'm going to object to the court's ruling.  I think it goes to interest, one of interest, whether or not this witness would want to be pleasing to the people who might be prosecuting him.

THE COURT:

Thank you Mr. Meyer.  Once again, I'll note Defense objection.  The Court ruling stands.

The defense is correct that the trial judge clearly erred in constraining the cross-examination of Skehan at the State's request.  The State in this Court concedes that the question was not objectionable.

The Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him."  "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination...."  <u>Davis v. Alaska</u>, 415 U.S. 308, 315-316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974), quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940).

In addition, La. Const. Art. I, § 16 states, in pertinent part, that "[a]n accused is entitled to confront and cross-examine the witnesses against him."

It is well-settled that "[a] witness's bias or interest may arise from arrests or pending criminal charges, or the prospect of prosecution, even when he has made no agreements with the state regarding his conduct." State v. Burbank, 2002-1407, p. 2 (La. 4/23/04), 872 So.2d 1049, 1050, quoting State v. Vale, 95-1230, p. 4 (La. 1/26/96), 666 So.2d 1070, 1072. A witness's "hope or knowledge that he will receive leniency from the state is highly relevant to establish his bias or interest." Vale, 95-1230, p. 4, 666 So.2d at 1072, quoting State v. Brady, 381 So.2d 819, 822 (La. 1980). "The possibility that the prosecution may have leverage over a witness due to that witness'[s] pending criminal charges is recognized as a valid area of cross-examination." Burbank, 2002-1407, p. 2, 872 So.2d at 1050, quoting State v. Rankin, 465 So.2d 679, 681 (La. 1985).

La. C.E. art. 607(D)(1) states that a party may attack the credibility of a witness by introducing extrinsic evidence to show the witness's bias or interest, except as otherwise provide by legislation. The trial court presumably relied upon the plain language of La. C.E. art. 609.1 in sustaining the objection, which sets forth the general rule that in a criminal case only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, indictment or a prosecution. However, as noted in Authors' Note 2, La. C.E. art. 609.1, Pugh, Force, Rault & Triche, Handbook on Louisiana Evidence Law (2007), "[d]enying an accused the right to cross-examine a state's witness as to a pending criminal charge in order to show possible bias may deny him not only his right of cross-examination, but also his constitutional right of confrontation."

Nonetheless the State argues that such error was harmless in view of the considerable other evidence against the defendants. Confrontation errors are subject to the harmless-error analysis, as reiterated by the Louisiana Supreme Court in Burbank, 2002-1407, p. 3, 872 So.2d at 1051.

An error is harmless beyond a reasonable doubt if the verdict was surely unattributable to such error. State v. Robertson, 2006-1537, p. 9 (La. 1/16/08), 988 So.2d 166, 172, (citing State v. Johnson, 94-1379, p. 17 (La. 11/27/95), 664 So.2d 94, 102; Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182

(1993)), rehearing granted in part on other grounds (La. 3/14/08); Vale, 96-2953, p. 2 (La. 9/19/97), 699 So.2d 876, 877.

The crucial issue insofar as the convictions of these defendants was their identification as the two individuals, at least one of whom was armed with a handgun, who perpetrated the armed robbery of Jessica Mendoza and the armed robbery of Daniel Skehan. Defendants were charged in count one with the armed robbery of Mendoza and charged in count two with the armed robbery of Skehan. The State presented the testimony of the alleged victims, each of whom had made out-of-court identifications of the two men as the robbers. Mendoza's testimony was in all respects corroborated by all the other witnesses. Skehan's testimony stands alone on the point of his being robbed of his cell phone.

Mendoza was face-to-face with the robbers and directly communicated with them. Bradley demanded money from her, raised a gun and reiterated that he wanted money. Mendoza handed cash to him out of the cash register. Bradley asked for the video poker money, and she informed him that the cash she had given him was all there was.

After positively excluding as the perpetrators other persons on the night of the robbery, Mendoza positively identified both defendants in separate photo lineups and in person in court during the trial. Mendoza's identification of the defendants was very strong and their identification was corroborated by other witnesses.

The cross-examination of Blandford elicited testimony that an on the scene witness, Carl Brown, who knew the defendants and who worked with them for Blandford's company, Black Tie, had recognized them and identified them by name.[FN2]

[FN2] Carl Brown did not testify at trial.

The tourist, whose first opportunity after the robbery to identify anyone was at the trial, positively identified Bradley.

The jury acquitted both defendants of robbing Skehan. It may have been that the only evidence of that accusation was Skehan's own testimony, uncorroborated by any one of the many patrons in the bar or by any physical or documentary evidence. It may have been that the jury's reasonable doubt arose from his several convictions.

Had the jury accepted Skehan's uncorroborated testimony and convicted these defendants of robbing him, we would not be able to conclude that the error was harmless. However, for whatever its reason(s), the jury's verdict is an implicit repudiation of Skehan's

credibility.[FN3]  Additionally, although the defense was unable to fully and properly explore Skehan's possible bias for the prosecution, he had denied that he had received any prosecutorial consideration for his testimony against the defendants.

> [FN3]   Skehan's testimony about the robbery of Jessica Mendoza was cumulative.

> Considering all of the facts and circumstances unique to this case, we can only conclude that the guilty verdicts rendered as to both defendants for the robbery of Jessica Mendoza were surely unattributable to the trial court's error in denying defense counsel the right to question Skehan as to whether he had a charge or charges pending against him in another section of court.  Therefore, that error was harmless beyond a reasonable doubt.
> This assignment of error is without merit.[12]

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[13]

As the state courts correctly found, the trial court's action in disallowing Skehan's cross-examination regarding his pending criminal charges violated the Confrontation Clause.  As the United States Supreme Court has explained:

> The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him.  The right of confrontation, which is secured for defendants in state as well as federal criminal proceedings, means more than being allowed to confront the witness physically.  Indeed, the main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.  Of particular relevance here, we have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.

---

[12] Bradley, 995 So.2d at 1234-36; State Rec., Vol.  III of VII.

[13] State v. Bradley, 17 So.3d 950 (La. 2009) (No. 2008-K-2610); State Rec., Vol. VI of VII.

<u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 678-79 (1986) (citations, quotation marks, and brackets omitted).  In <u>Van Arsdall</u>, the Supreme Court found that it was a violation of the Confrontation Clause for a trial court to prohibit all inquiry into the possibility that a witness would be biased as a result of pending criminal charges against him.  <u>Id</u>. at 679.  The Supreme Court concluded:

> We think that a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors could appropriately draw inferences relating to the reliability of the witness. Respondent has met that burden here:  A reasonable jury might have received a significantly different impression of [the witness'] credibility had respondent's counsel been permitted to pursue his proposed line of cross-examination.

<u>Id</u>. at 680 (citation, quotation marks, and ellipsis omitted).

However, as also correctly noted by the state court, this type of error can be harmless.  <u>Id</u>. at 684.  The standard of review that the United States Supreme Court set forth in <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637-38 (1993), governs federal *habeas* review of constitutional errors that occur during a state trial.  <u>Fry v. Pliler</u>, 551 U.S. 112, 121-22 (2007); <u>Burbank v. Cain</u>, 535 F.3d 350, 357 (5th Cir. 2008).  An constitutional error during a state trial is considered harmless under <u>Brecht</u> unless the petitioner shows that the error resulted in "actual prejudice," meaning that the constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict."  <u>Fry</u>, 551 U.S. at 116 and 119-20; <u>Barrientes v. Johnson</u>, 221 F.3d 741, 756 (5th Cir. 2000). The United States Fifth Circuit Court of Appeals has explained:

> To determine whether the error was harmless, we consider the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of

> evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and of course, the overall strength of the prosecution's case.

Hafdahl v. Johnson, 251 F.3d 528, 540 (5th Cir. 2001) (quotation marks omitted).

As the state courts correctly found, the error here was clearly harmless. Petitioner was convicted of only the first degree robbery of Mendoza. Mendoza and other witnesses testified credibly concerning the events establishing the elements of that crime, and Mendoza positively identified petitioner as one of the robbers both prior to and at trial. The evidence of petitioner's guilt was substantial and Skehan's testimony concerning the robbery of Mendoza was entirely cumulative. Therefore, the Confrontation Clause violation was harmless, and this Court should deny relief.

## B. Ineffective Assistance of Counsel

Petitioner also claims that he received ineffective assistance of counsel. The state argues that these claims are procedurally barred because they were never exhausted by properly presenting them to the Louisiana Fourth Circuit Court of Appeal. The state notes that petitioner expressly asserted the claims to the state district court and the Louisiana Supreme Court; however, the state contends that he did not expressly present the claims to the Louisiana Fourth Circuit Court of Appeal. Rather, in his writ application filed with the Court of Appeal, he instead argued only that the district court's denial of relief should be reversed on *procedural* grounds, i.e. because the district court denied relief without holding an evidentiary hearing, did not require the state to file an answer,

and denied the post-conviction application without ruling on his amendment to that application.[14]

While the state is correct on that point, it is clear that the Court of Appeal nevertheless reviewed petitioner's underlying *substantive* post-conviction claims, holding: "This court has reviewed the claims *raised by relator in his application for post-conviction relief and motion to amend* and finds no error in the judgment of the district court denying relief."[15] Because the Court of Appeal ruled on the substance of petitioner's post-conviction claims, this Court rejects the state's argument that the claims are procedurally barred as unexhausted.[16] The Court will therefore review the merits of petitioner's ineffective assistance of counsel claims.

The United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two

---

[14] A copy of the writ application is included in Volume VII of the state court record.

[15] State v. Smith, No. 2010-K-0407 (La. App. 4th Cir. Mar. 29, 2010) (emphasis added); State Rec., Vol. VII of VII.

[16] In any event, a federal court need not decide whether a claim is procedurally barred if the claim clearly fails on the merits. Glover v. Hargett, 56 F.3d 682, 684 (5th Cir. 1995); Wiley v. Puckett, 969 F.2d 86, 104 (5th Cir. 1992); Corzo v. Murphy, Civ. Action No. 07-7409, 2008 WL 3347394, at *1 n. 5 (E.D. La. July 30, 2008); Lee v. Cain, Civ. Action No. 06-9669, 2007 WL 2751210, at *9 (E.D. La. Sept. 18, 2007).

prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

The appropriate standard for determining prejudice varies slightly depending on whether a petitioner is challenging the actions of trial or appellate counsel. In order to prove prejudice with respect to *trial* counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors

played in the total context of [the] trial."  Crockett, 796 F.2d at 793.  On the other hand, to prove

prejudice with respect to a claim that *appellate* counsel was ineffective, a petitioner must show a

reasonable probability that he would have prevailed on appeal but for his counsel's deficient

representation.  Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins,

528 U.S. 259, 286 (2000).  Therefore, a petitioner must demonstrate a reasonable probability that,

if appellate counsel's performance had not been deficient in the manner claimed, the appellate court

would have vacated or reversed the trial court judgment based on the alleged error.  Briseno, 274

F.3d at 210.

Petitioner's ineffective assistance of counsel claims were rejected by the state courts

in the post-conviction proceedings.  Because such a claim is a mixed question of law and fact, this

Court must defer to the state court decision rejecting petitioner's claims unless that decision was

"contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell,

313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court recently explained

that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims

is in fact *doubly* deferential:

> The pivotal question is whether the state court's application
> of the Strickland standard was unreasonable.  This is different from
> asking whether defense counsel's performance fell below
> Strickland's standard.  Were that the inquiry, the analysis would be
> no different than if, for example, this Court were adjudicating a
> Strickland claim on direct review of a criminal conviction in a United
> States district court.  Under AEDPA, though, it is a necessary
> premise that the two questions are different.  For purposes of §
> 2254(d)(1), an *unreasonable* application of federal law is different
> from an *incorrect* application of federal law.  A state court must be

granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." <u>Ibid</u>. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 131 S.Ct. 770, 785-86 (2011) (citation omitted). The Supreme Court then

explained:

Surmounting <u>Strickland</u>'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness

– 18 –

> under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Id. at 788 (citations omitted; emphasis added). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claims.

Petitioner first argues that his trial counsel was ineffective for failing to object to the use of the predicate conviction to adjudicate him as a second offender. He argues that the predicate conviction resulted in only probation and, therefore, could not be used to enhance his current sentence. However, he has failed to cite any authority for his argument that a predicate conviction resulting in only probation cannot be used to adjudicate a defendant as a multiple offender under La.Rev.Stat.Ann. § 15:529.1, and a review of Louisiana jurisprudence shows that such predicate convictions are in fact used for that purpose. See, e.g., State v. Rousselle, 514 So.2d 577, 580 (La. App. 4th Cir. 1987). Therefore, any objection on this basis would have been meritless, and counsel is not ineffective for failing to lodge meritless objections. Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

Petitioner next argues that his trial counsel was ineffective for not objecting to the trial court's failure to specify reasons for the sentence imposed. Louisiana law provides: "The court

shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence." La. Code Crim. P. art. 894.1(C). However, a "trial judge's failure to comply with La. Code Crim. Proc. article 894.1 does not automatically render a sentence invalid." State v. Dauzart, 89 So.3d 1214, 1223 (La. App. 4th Cir. 2012), writ denied, 99 So.3d 38 (La. 2012).

Even if the trial judge erred by failing to comply with article 894.1(C), petitioner was not prejudiced by counsel's failure to object. The trial judge imposed the minimum sentence in this case.[17] Therefore, even if the judge's noncompliance with art. 894.1(C) been brought to his attention, either at the time of sentencing or in a motion to reconsider sentence, there is no reasonable probability that a lesser sentence would have been imposed or that the result of the proceeding would have differed in any way.

Petitioner also argues that his appellate counsel was ineffective for failing to claim on appeal that the trial was not commenced within the period allowed by law.[18] However, even if a claim challenging the denial of the trial counsel's motion to quash would not have been frivolous, which is questionable at best, appellate counsel simply "is not obligated to urge on appeal every nonfrivolous issue that might be raised (not even those requested by defendant)." West v. Johnson, 92 F.3d 1385, 1396 (5th Cir. 1996). "Experienced advocates since time beyond memory have

---

[17] Petitioner was convicted of first degree robbery, a crime which carries a sentence of not less than three years or more than forty years. La.Stat.Rev.Ann, § 14:64.1(B). As a second offender, he therefore faced an enhanced sentence of not less than twenty years or more than eighty years. See La.Rev.Stat.Ann. § 15:529.1(A)(1). As previously noted, petitioner received a twenty-year sentence.

[18] The record reflects that defense counsel failed a motion to quash on the basis that the trial was untimely under Louisiana law, the state opposed that motion, and defense counsel filed a reply to that opposition. State Rec., Vol. IV of VII.

emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes, 463 U.S. 745, 751-52 (1983). Far from evidencing ineffectiveness, an appellant counsel's restraint often benefits his client because "a brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions." Id. at 753.

Rather, the applicable test is whether the ignored issue was "clearly stronger" than the issues actually presented on appeal. See, e.g., Diaz v. Quarterman, 228 Fed. App'x 417, 427 (5th Cir. 2007); see also Smith v. Robbins, 528 U.S. 259, 288 (2000). That is not the case here. On direct appeal, counsel argued that the trial court improperly curtailed the cross-examination of Skehan and that trial counsel was ineffective in presenting an Allen charge to a deadlocked jury.[19] Obviously, the argument concerning the curtailment of cross-examination was a strong one; indeed, as previously noted, the state conceded on appeal that the trial court erred and was spared reversal of the conviction only by arguing that the error was ultimately harmless.

A claim that the motion to quash was wrongly denied was certainly no stronger; on the contrary, it was much weaker. The prosecution of this case was instituted by the filing of a bill of information on or about May 28, 2004.[20] Therefore, under La. Code Crim. P. art. 578(A)(2), the state would normally have been required to bring petitioner to trial within two years. However, Louisiana law further provides that the limitations period set forth in article 578 is interrupted if

---

[19] See Allen v. United States, 164 U.S. 492 (1896).

[20] State Rec., Vol. II of VII. The bill of information is dated May 28, 2004, and bears an indication that it was filed on June 1, 2004.

"[t]he defendant cannot be tried ... for any ... cause beyond the control of the state" and that limtations period then "run[s] anew from the date the cause of interruption no longer exists." La. Code Crim. P. art. 579. In this case, the limitations period was interrupted by Hurricane Katrina, which Louisiana courts have repeatedly held was a "cause beyond the control of the state" within the meaning of article 579. In such cases, the limitations period began to run anew from June 5, 2006. State v. Patin, 95 So.3d 542, 552-53 (La. App. 4th Cir. 2012); State v. Williams, 5 So.3d 904 (La. App. 4th Cir. 2009); State v. Francis, 977 So.2d 187, 192 (La. App. 4th Cir. 2008). Therefore, the state had an additional two years from that date, i.e. until June 5, 2008, to commence petitioner's trial. Williams, 5 So.3d at 905. Because he was brought to trial on March 7, 2007, the trial was timely and the motion to quash had no merit.[21] Accordingly, any claim on appeal that the trial court erred in denying the motion to quash would have been weak at best and arguably even frivolous.

For these reasons, under the "doubly deferential" standards of review mandated by the AEDPA, this Court simply cannot say that state court's decision rejecting petitioner's ineffective assistance of appellate counsel claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Therefore, this Court should defer to that ruling and likewise deny the claim.

---

[21] The motion to quash lacked merit for another reason. Defense counsel filed a motion for discovery on June 23, 2006. State Rec., Vol. IV of VII. Under La. Code Crim. P. art. 580, the state then had one additional year from the ruling on that motion to commence trial. See, e.g., State v. Jones, 940 So.2d 61, 73 (La. App. 2nd Cir. 2006).

<u>C. Allen Charge</u>

Although petitioner does not list it as one of his claims,[22] his memorandum contains a brief reference to the state court's denial of his claim that the trial court gave a prohibited <u>Allen</u> charge and that his counsel was ineffective for failing to object to that charge.[23] Out of an abundance of caution, the Court will also address that claim.

On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected the claim, holding:

> [B]oth defendants argue that the trial court erred in presenting an "Allen" charge to the dead-locked jury. Since both defendants concede that their respective trial counsel did not object to the charge, they both argue here that this alleged lapse constituted ineffective assistance of counsel.
>
> "As a general rule, claims of ineffective assistance of counsel are more properly raised by application for post conviction relief in the trial court where a full evidentiary hearing may be conducted if warranted." <u>State v. Howard</u>, 98-0064, p. 15 (La. 4/23/99), 751 So.2d 783, 802 (citations omitted). However, where the record is sufficient, the claims may be addressed on appeal. <u>State v. Wessinger</u>, 98-1234, p. 43 (La. 5/28/99), 736 So.2d 162, 183. The record is sufficient in this case to resolve the issue of ineffective assistance of counsel with respect to the failure of defense counsel to object to the alleged "Allen" charge.
>
> Ineffective assistance of counsel claims are reviewed under the two-part test of <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). <u>State v. Brooks</u>, 94-2438, p. 6 (La. 10/16/95), 661 So.2d 1333, 1337 (on rehearing). In order to prevail, the defendant must show both that: (1) counsel's performance was deficient; and (2) he was prejudiced by the deficiency. <u>Brooks</u>, *supra*. Counsel's performance is ineffective when it is shown that he made errors so serious that counsel was not

---

[22] <u>See</u> Rec. Doc. 1, p. 20.

[23] Rec. Doc. 1, p. 23.

functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 686, 104 S.Ct. at 2064; State v. Ash, p. 9 (La.App. 4 Cir. 2/10/99), 729 So.2d 664, 669. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant must show that there is a reasonable probability that, but for counsel's deficient performance the result of the proceeding would have been different; "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 693, 104 S.Ct. at 2068; State v. Guy, 97-1387, p. 7 (La.App. 4 Cir. 5/19/99), 737 So.2d 231, 236.

The trial transcript in the instant case reflects that the jury retired to deliberate at 6:15 p.m. At 8:30 p.m. the jury returned to the courtroom and informed the trial court they were deadlocked. The following colloquy transpired:

THE COURT:

I received a note from the foreperson, Mr. Freibert –

MR. FREIBERT:

Yes, sir.

THE COURT:

– to the effect that you've apparently reached an impasse in your deliberations.

MR. FREIBERT:

That's correct.

THE COURT:

Ladies and Gentlemen: I first want to commend you for your efforts, and acknowledge the fact that you have obviously worked very, very, very hard on this case. It's late in the evening and it's an incredible burden, but under the responsibility that you're there to deliberate to a legal conclusion in this

case. It's obviously a very, very serious case that you obviously are taking very, very seriously.

Ladies and Gentlemen, despite the difficulties that you all have been experiencing, I remain confident that there is no better mechanism for bringing this matter to a conclusion that this jury system by which we live. I don't think you're going to find any more competent jurors, any more capable collection of people who are in a position to tackle this very, very difficult issue. I know you've tried, ladies and gentlemen.

In an effort, in an effort to break this deadlock, I'm going to re-read to you the instruction regarding the various responsive verdicts available to you in this case, of which there are seven.

An "Allen" charge refers to jury instructions intended to break a deadlocked jury. The term refers to an 1896 decision by the U.S. Supreme Court in <u>Allen v. U.S.</u>, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), where the court considered additional jury instructions given after the jury had returned from deliberations seeking further instruction. The court summarized the substance of the additional instruction as follows:

[T]hat in a large proportion of cases absolute certainty could not be expected; that, although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor, and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, on the other hand, the majority were for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the

> correctness of a judgment which was not concurred in
> by the majority.

Allen v. U.S., 164 U.S. at 501, 17 S.Ct. at 157.  The U.S. Supreme Court found no error in the giving of the instructions.

Nevertheless, in Louisiana an "Allen" charge is disfavored for two reasons:  (1) the charge emphasizes that the jury has a duty to reach a verdict, implying that the trial judge will not accept a mistrial; and (2) "'when the duty to reach a verdict is coupled with an admonition by the trial judge that those in the minority should rethink their position, there exists an almost overwhelming pressure to conform to the majority's view. (Citation omitted).'"  State v. Alvarez, 2000-0819, p. 15 (La.App. 4 Cir. 7/18/01), 792 So.2d 875, 885, quoting State v. Collor, 99-0175 (La.App. 4 Cir. 4/26/00), 762 So.2d 96.

References Bradley specifically cites the following sentence of the trial court's additional instruction as meaning that the jury had a duty to reach a verdict:  "It's late in the evening and it's an incredible burden, but under the responsibility that you're there to deliberate to a legal conclusion in this case...."  However, a jury is under a duty to deliberate to a legal conclusion – if it can.  At no point in giving the additional instruction did the trial court imply that it would not accept a mistrial or that any jurors in the minority should reconsider their views.  The additional instruction did not constitute a prohibited "Allen" charge.  Further, the jury was faced with two defendants, each charged with two counts of armed robbery, and it had been deliberating only two hours and fifteen minutes at the time it returned to the courtroom and said it was unable to agree on verdicts.  It was not an abuse of discretion for the trial court to require the jury to continue deliberating.

Even assuming the instruction constituted a prohibited "Allen" charge and that both defense counsel were deficient in failing to object thereto, neither defendant has shown that there is a reasonable probability that, but for counsels' deficient performances, the result of the proceeding would have been different.  Accordingly, neither defendant has established a claim of ineffective assistance of counsel.

This assignment of error is without merit.[24]

------

[24] Bradley, 995 So.2d at 1236-39; State Rec., Vol.  III of VII.

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[25]

Clearly, <u>Allen</u> charges, although generally proper, can be problematic. As the United States Fifth Circuit Court of Appeals has explained:

> The use of a supplemental charge, usually called an Allen charge, as a means of bringing about jury unanimity has met with much criticism. Where the court employs such a supplemental charge, a substantial danger of prejudice results from the possibility that jurors will surrender conscientiously held beliefs in order to accommodate pressure from the bench. The pressure usually arises from the language of the charge which, among other things, may suggest that the minority should reconsider its views, that a verdict should issue within a short period of time, or even that some jurors are misbehaving by refusing to join in an otherwise unanimous decision.

<u>United States v. Cheramie</u>, 520 F.2d 325, 329-30 (5th Cir. 1975) (footnotes omitted). The Fifth Circuit has stated that <u>Allen</u> charges are most troubling when the jury minority is exhorted to reexamine its views in light of the majority's arguments and when the jury is urged to reach a verdict by reminding them of "the nature of their duty and the time and expense of a trial." <u>Montoya v. Scott</u>, 65 F.3d 405, 410 (5th Cir. 1995).

As the state court correctly noted, the charge given by the trial court did not contain any of the types of language or exhortations which are improper or problematic. It was a proper charge and, therefore, as previously explained, defense counsel cannot be considered ineffective for failing to make what would have been a meritless objection. <u>Clark v. Collins</u>, 19 F.3d 959, 966 (5th Cir. 1994); <u>see also</u> <u>United States v. Kimler</u>, 167 F.3d 889, 893 (5th Cir. 1999).

---

[25] <u>State v. Bradley</u>, 17 So.3d 950 (La. 2009) (No. 2008-K-2610); State Rec., Vol. VI of VII.

For these reasons, it is evident that the state court's decision rejecting this claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under the standards mandated by the AEDPA, this Court should defer to the state court ruling and likewise deny the claim.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition of **Lonnie Smith** for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[26]

New Orleans, Louisiana, this twenty-third day of January, 2013.

DANIEL E. KNOWLES, III
**UNITED STATES MAGISTRATE JUDGE**

---

[26] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.